**Ocean Props. LLC v Sierra**

2024 NY Slip Op 33107(U)

September 3, 2024

Civil Court of the City of New York, Kings County

Docket Number: Index No. 312184/23

Judge: David A. Harris

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART C

-------------------------------------------------------------------------------x

OCEAN PROPERTIES LLC,

                            Petitioner,

           -against-

MADELINE SIERRA,
"JOHN DOE", "JANE DOE,"

                      Respondents.

-------------------------------------------------------------------------------x

**L&T Index No. 312184/23**
**Mot. Seq. No. 1**


**DECISION AND ORDER**

**HONORABLE DAVID A. HARRIS, J.H.C.:**

      t

Recitation, as required by CPLR 2219(a), of the papers considered in the review of petitioner's motion for partial summary judgment, listed by NYSCEF Doc. No.: 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26

_____

Upon the foregoing cited papers, the Decision and Order on this Motion is as follows:

        After the service of a Fifteen Day Notice to Terminate dated February 21, 2023 (Notice), petitioner commenced this summary proceeding seeking possession of apartment #C-11 (Apartment) in the building located at 602-618 Ocean Avenue, in Brooklyn. The Notice asserts that respondent Madeline Sierra is a licensee whose license terminated upon the death of Felicia Sierra, the tenant of record (NYSCEF Doc. No. 1).

        Respondent Madeline Sierra appeared by counsel (NYSCEF Doc. No. 5) and interposed an answer raising six affirmative defenses, one affirmative defense and counterclaim, and seven additional counterclaims. As relevant here, the answer as its first

[* 1]

defense asserts that Madeline Sierra is entitled to succeed to the tenancy of the Apartment and is "entitled to possession of the subject premises on the same terms as the primary leaseholder pursuant to §2523.5(b)(1) of the Rent Stabilization Code."

Petitioner now moves for partial summary judgment, asking that this court strike the portion of respondent's first defense asserting that respondent is entitled to succession based on the same reduced rent that was paid by the deceased tenant of record. Respondent opposes.

Petitioner asserts that the relevant facts are not disputed. Felicia Sierra, now deceased, came into possession of the Apartment pursuant to the terms of a stipulation of settlement (Stipulation) related to her tenancy of another apartment in a different building. The Stipulation, executed in 2005 with both parties represented by counsel (NYSCEF Doc. No. 12), provided that Felicita Sierra (referred to here as Felicia Sierra by petitioner) surrendered all rights to the apartment that was the subject of that proceeding, and that petitioner in that proceeding would obtain a rent stabilized lease for the Apartment at $850 per month but that Sierra "will have a lifetime preferential rent during the life of Felicia Sierra at $226.10 per month. The rent preference is personal to respondent only, but shall continue for the balance of her life. Every two years, landlord may, at his option, forward a renewal lease at the then RGBO increase, with the proviso that Ms. Sierra's rent shall not increase and shall remain $226.10." The stipulation further calls for payment of a "stipend" of $25,000 upon vacatur. Petitioner argues that the Stipulation is a contract, and is subject to rules of contract interpretation, particularly asserting that "the integral and essential elements of the parties' agreement was that, in

2

exchange for being paid $25000.00 and also being granted a lifetime reduced and fixed rent, no other party or entity could lay claim to such a concession [and] this court is bound to enforce the parties' agreement and understanding."

Petitioner argues that the rent set forth in the Stipulation was personal to the decedent and could not be transferred, and characterizes that Stipulation as setting forth a structured settlement, affording petitioner

> "the certainty that it was paying precisely the amount required, again, without having to guess at Decedent's longevity – and obtained the additional benefit of being permitted to pay that settlement over time, in monthly installments, without having to come up with an immediate, additional and relatively large cash outlay Petitioner neither ascribes a total value to to the asserted structured settlement nor explains how the settlement represented "precisely the amount required" when the value of the settlement was entirely dependent on the decedent's longevity.
>
> Hence, the lifelong rent discount afforded the Decedent was simply an alternative form of monetary compensation, provided in consideration of her surrender of her previous apartment and covenant to remain as the sole occupant of the subject apartment."

The court notes that the Stipulation nowhere contains any provision that respondent remain as the sole occupant of the Apartment. Ultimately, petitioner asserts that "the consideration of the settlement was not the granting of a preferential rent (within the meaning of the Rent Stabilization Law and Code), but rather a buyout consisting of a $25,000.00 payment plus a life-long payout of the difference between the legal rent and $226.10 per month."

Respondent's counsel, in prolix form, takes issue with much of petitioner's interpretation of the agreement and its impact. Respondent's argument, pared to its essence, is

3

[* 3]

that provisions of the Housing Stability and Tenant Protection Act of 2019 (HSTPA), the Rent

Stabilization Law and Code, the Real Property Law, taken together, compel the conclusion that

petitioner's motion be denied.

The court finds entirely unpersuasive petitioner's tortured interpretation of the

Stipulation and its attempt to assert that the stipulation, notwithstanding its use of the term

"preferential rent," did not in fact create one.

The Court of Appeals has held that:

> "The best evidence of what parties to a written agreement intend
> is what they say in their writing" (*Slamow v. Del Col*, 79 N.Y.2d
> 1016, 1018, 584 N.Y.S.2d 424, 594 N.E.2d 918 [1992]). Under
> longstanding rules of contract interpretation, "[w]here the terms
> of a contract are clear and unambiguous, the intent of the parties
> must be found within the four corners of the contract, giving a
> practical interpretation to the language employed and reading the
> contract as a whole" (*Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239,
> 244, 997 N.Y.S.2d 339, 21 N.E.3d 1000 [2014], citing *Greenfield v.
> Philles Records*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d
> 166 [2002]; *W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162–163,
> 565 N.Y.S.2d 440, 566 N.E.2d 639 [1990])."

(*Tomhannock, LLC v Roustabout Resources, LLC*, 33 NY3d 1080, 1082 [2019]). Here, the Stipulation

unambiguously refers to a preferential rent, at the rate of the rent-controlled apartment

respondent was vacating pursuant to the Stipulation, rather than to the structured settlement

the value of which was entirely dependent upon respondent's longevity.

There is no question that respondent died after the effective date of the HSTPA.

As modified by the HSTPA, the Rent Stabilization Law provides that:

> "For any tenant who is subject to a lease on or after the effective
> date of a chapter of the laws of two thousand nineteen which

4

[* 4]

amended this paragraph, or is or was entitled to receive a renewal or vacancy lease on or after such date, upon renewal of such lease, the amount of rent for such housing accommodation that may be charged and paid shall be no more than the rent charged to and paid by the tenant prior to that renewal, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law. "

(RSL § 26-511) The Rent Stabilization Code, governing the renewal of leases, provides that:

"The lease provided to the tenant by the owner pursuant to subdivision (b) of this section shall be on the same terms and conditions as the expired lease, except where the owner can demonstrate that the change is necessary in order to comply with a specific requirement of law or regulation applicable to the building or to leases for housing accommodations subject to the RSL, or with the approval of the DHCR."

(9 NYCRR 2522.5[f][1]). While the passage of the HSTPA altered the regulatory scheme related to the process of renewal, it was already in effect when Felicita Sierra died.

In *Westside Marquis v Maldonado* (81 Misc 3d 143[A], 2024 NY Slip Op 50169[U][App Term 1st Dept 2024]), the court in declining to apply the provisions of the HSTPA, found trenchant that:

"respondent's entitlement to a renewal lease did not arise "on or after" the effective date of the HSTPA, which was June 14, 2019. Rather, his right as a successor tenant, though inchoate until ratified by judicial determination (*see 245 Realty Assoc. v Sussis*, 243 AD2d 29, 33 [1998]), "logically must relate back to the date creating his statutory rights, the death of the tenant of record" (*id.* at 33; *see Marine Terrace Assoc. v Kesoglides*, 44 Misc 3d 141[A], 2014 NY Slip Op 51303[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]). Here, respondent's grandmother died in June 2016, three years prior to the 2019 enactment of the HSTPA."

5

(*W. Side Marquis LLC v Maldonado*, 81 Misc 3d 143(A) [App Term 1st Dept 2024]). Here, in contrast, the death of the Felicita Sierra occurred after the effective date of the HSTPA. It is unequivocally applicable.

Under the salient provisions of the Rent Stabilization Code, a successor is entitled not to a new vacancy lease, but to a renewal lease (RSC §2523.5). Taken together, these provisions mean that a successor tenant is entitled to a renewal lease on the same terms and conditions as the tenant being succeeded. Since no tenant can waive a benefit of the Rent Stabilization Code (RSC §2520.13) and the above-cited provisions of the Rent Stabilization Code existed during the lifetime of the decedent, it could not be waived, notwithstanding an agreement to the contrary previously made.

In this context, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Petitioner has not done so, and the motion for partial summary judgment is therefore denied.

This matter will next appear on the Part C calendar for all purposes, including preliminary conference and transfer for trial, on September 16, 2024 at 11:30 AM.

This is the decision and order of the court.

Dated: Brooklyn, New York
     September 3, 2024

                                 HON. DAVID A. HARRIS, J.H.C.

6

Petitioner's attorneys:
Slochowsky & Slochowsky
Attn: William Slochowsky, Esq.
Attn: Charles J. Siegel, Esq.
26 Court Street, Ste. 304
Brooklyn, N.Y. 11242
info@ssrelaw.com

Respondent's attorneys:
Brooklyn Legal Services
Attn: Irene Ginsberg, Esq.
105 Court Street, Fl. 4
Brooklyn, N.Y. 11201
Iginsberg@lsnyc.org

7

[* 7]